[Cite as *State v. Jackson*, 2025-Ohio-2634.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## LAKE COUNTY

| | |
|---|---|
| STATE OF OHIO, | CASE NO. 2024-L-037 |
| Plaintiff-Appellee, | |
| - vs - | Criminal Appeal from the Court of Common Pleas |
| WILLIAM J. JACKSON, | |
| Defendant-Appellant. | Trial Court No. 2020 CR 000558 |

## OPINION AND JUDGMENT ENTRY

Decided: July 28, 2025
Judgment: Reversed and remanded

*Charles E. Coulson*, Lake County Prosecutor, *Teri R. Daniel* and *Jennifer A. McGee*, Assistant Prosecutors, Lake County Administration Building, 105 Main Street, P.O. Box 490, Painesville, OH 44077 (For Plaintiff-Appellee).

*Richard E. Hackerd*, 55 Public Square, Suite 2100, Cleveland, OH 44113 (For Defendant-Appellant).

MATT LYNCH, J.

{¶1} Defendant-appellant, William J. Jackson, appeals his sentence for one count of Attempted Murder and two counts of Improperly Discharging a Firearm at or into Habitation or School Safety Zone. For the following reasons, Jackson's sentence is reversed and the case is remanded for re-sentencing.

{¶2} The facts underlying Jackson's convictions are described in *State v. Jackson*, 2023-Ohio-4368, ¶ 7-29 (11th Dist.).

{¶3} After an initial trial by jury in the Lake County Court of Common Pleas, Jackson was convicted of Attempted Murder, two counts of Improperly Discharging a

Firearm at or into Habitation or School Safety Zone, and Improperly Handling Firearms in a Motor Vehicle. The Attempted Murder and Improperly Discharging a Firearm charges included Firearms Specifications pursuant to R.C. 2941.145 and R.C. 2941.146. In January 2021, Jackson was sentenced to concurrent prison terms of a minimum of three years to a maximum of four and one-half years for Attempted Murder; three years for each count of Improperly Discharging a Firearm; and eighteen months for Improperly Handling Firearms. Additionally, Jackson received consecutive prison terms of three years for the R.C. 2941.145 specification and five years for the R.C. 2941.146 specification. Jackson's aggregate sentence was a minimum of eleven years to a maximum of twelve and one-half years. *State v. Jackson*, 2022-Ohio-3483, ¶ 7 (11th Dist.).

{¶4} Jackson appealed his convictions, and they were reversed on appeal. *Id.* at ¶ 8-16.

{¶5} The State of Ohio independently appealed Jackson's sentence. The State claimed, in relevant part, that "the trial court was statutorily obligated to impose sentences on at least two of the three-year firearm specifications [R.C. 2941.145] of which Mr. Jackson was convicted, in addition to imposing a sentence on one five-year discharge specification [R.C. 2941.146]." *State v. Jackson*, 2022-Ohio-3481, ¶ 7 (11th Dist.). In other words, the court erred by not imposing a sentence for at least one of the R.C. 2941.145 specifications included with the Improperly Discharging a Firearm convictions as required by R.C. 2929.14(B)(1)(g) ("[i]f an offender is convicted of … two or more felonies, if one or more of those felonies are … attempted murder … and if the offender is convicted of or pleads guilty to a specification of the type described [in section 2941.145 of the Revised Code] in connection with two or more of the felonies, the sentencing court

Case No. 2024-L-037

shall impose on the offender the prison term specified under [section 2941.145 of the Revised Code] for each of the two most serious specifications of which the offender is convicted … and, in its discretion, also may impose on the offender the prison term specified under that division for any or all of the remaining specifications"). The State's appeal, however, was dismissed as moot on the grounds that Jackson's convictions were reversed. *Id.* at ¶ 8.

{¶6} Following retrial, Jackson was found guilty of Attempted Murder (Count 1); Felonious Assault (Count 2); Improperly Discharging a Firearm at or into Habitation or School Safety Zone (Count 3); Improperly Discharging a Firearm at or into Habitation or School Safety Zone (Count 4); and Improperly Handling Firearms in a Motor Vehicle (Count 5). Counts 1 to 4 included Firearm Specifications pursuant to R.C. 2941.145 and R.C. 2941.146.

{¶7} At the sentencing hearing on January 5, 2023, Felonious Assault (Count 2) and Improperly Handling Firearms (Count 5) merged with Attempted Murder (Count 1). For Attempted Murder (Count 1), the trial court ordered Jackson to serve a minimum of four years and maximum of six years in prison with a mandatory three years for the firearm specification under R.C. 2941.145 and a mandatory five years for the firearm specification under R.C. 2941.146. For Improperly Discharging a Firearm (Count 3), the court ordered him to serve two years in prison with a mandatory three years for the firearm specification under R.C. 2941.145. For Improperly Discharging a Firearm (Count 4), the court ordered him to serve two years in prison. The sentences for Improperly Discharging a Firearm were ordered to be served concurrently with each other and consecutively to the sentence for Attempted Murder. The mandatory firearm specification sentences were ordered to

Case No. 2024-L-037

be served consecutively with each other and consecutively to the sentence for Attempted Murder. Jackson's stated aggregate minimum prison sentence was seventeen years, and the aggregate maximum sentence was nineteen years. *Jackson*, 2023-Ohio-4368, at ¶ 31 (11th Dist.).

{¶8} On appeal, this Court affirmed Jackson's convictions but reversed the sentence. Regarding the sentence, this Court held as follows:

> An appellate court "may vacate [a felony] sentence and remand the matter to the sentencing court for resentencing * * * if it clearly and convincingly finds * * * [t]hat the record does not support the sentencing court's findings under * * * (C)(4) of section 2929.14 * * * [or] [t]hat the sentence is otherwise contrary to law." R.C. 2953.08(G)(2)(a) and (b). "[A] sentence vindictively imposed on a defendant for exercising his constitutional right to a jury trial is contrary to law." *State v. Rahab*, 150 Ohio St.3d 152, 2017-Ohio-1401, 80 N.E.3d 431, ¶ 8; *see North Carolina v. Pearce*, 395 U.S. 711, 725, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969) ("[d]ue process of law * * * requires that vindictiveness against a defendant for having successfully attacked his first conviction must play no part in the sentence he receives after a new trial"); *Alabama v. Smith*, 490 U.S. 794, 798, 109 S.Ct. 2201, 104 L.Ed.2d 865 (1989) ("[w]hile sentencing discretion permits consideration of a wide range of information relevant to the assessment of punishment * * * it must not be exercised with the purpose of punishing a successful appeal").
>
> "In Ohio, it has generally been held that 'a presumption of vindictiveness arises when the same judge imposes a harsher sentence following a successful appeal.'" (Citation omitted.) *State v. Ferrell*, 2021-Ohio-1259, 170 N.E.3d 464, ¶ 17 (11th Dist.). "In order to overcome the presumption of vindictiveness, the trial court must make affirmative findings on the record regarding conduct or events that occurred or were discovered after the original sentencing." *State v. Watson*, 2023-Ohio-1469, 213 N.E.3d 1175, ¶ 33 (5th Dist.); *Ferrell* at ¶ 20, citing *Pearce* at 726 ("when a more severe sentence is imposed by a judge 'the reasons for his doing so must affirmatively appear,' they must be 'based upon objective information' and 'the factual data upon which the increased sentence is based must be made part of the record'"). The findings necessary to rebut a presumption of vindictiveness have been described thus:
>
>> When the same sentencer acts in both instances, giving rise to the presumption of vindictiveness, the

Case No. 2024-L-037

explanation required by *Pearce* is not avoided merely because of some differences in the two proceedings. It is the sentencer's explanation of how those differences affected the sentencer's calculus in imposing a harsher sentence that operates to dispel the defendant's apprehension that exercising his right of appeal could work to his prejudice in this way. *Pearce*. Therefore, when the presumption arises but the sentencer fails to articulate the required explanation, the presumption of vindictiveness is not rebutted.

*State v. Howard*, 174 Ohio App.3d 562, 2007-Ohio-4334, 883 N.E.2d 1077, ¶ 23 (2d Dist.).

In the present case, Jackson was tried and sentenced by the same judge in both trials. After the first trial, he received an aggregate minimum sentence of eleven years and a potential maximum sentence of twelve and a half years. After the second trial, the aggregate minimum sentence was seventeen years and the potential maximum sentence was nineteen years – a difference of six to six and a half years. We acknowledge that there were notable differences in the way the sentence was imposed after each trial. At the second sentencing, the court increased the sentence for Attempted Murder but decreased the sentences for Improperly Discharging a Firearm at or into a Habitation or School Safety Zone; Jackson received a sentence for Improperly Handling Firearms in a Motor Vehicle after the first trial but after the second trial this count was merged with Attempted Murder; the sentences ran concurrently after the first trial (except for the firearm specifications) but after the second trial the sentence for Aggravated Murder was ordered to be served consecutively; and, lastly, the court imposed different sentences for the firearm specifications after each trial. Despite the differences in the manner the sentences were structured, the increased sentence of six to six and a half years raises the presumption of vindictiveness.

The trial court made the following observations at sentencing following retrial:

So in this trial we had, the difference between this trial and the trial in December of '20 was there was additional evidence, additional testimony and off the top of my head additional information was the phone calls from Meade and the fact that Kraig Davis had an extreme lapse of memory during this trial that he did

Case No. 2024-L-037

not have during the first trial, the testimony of Anderson and the letter that Mr. Jackson sent out on the cell phone immediately preceding this trial [resulting in Anderson being identified as a snitch on social media], I think it was immediately preceding the trial so that wasn't information that was available at the first trial.

The foregoing succinctly highlights the differences in evidence presented at the two trials, but it fails to explain how the additional evidence affected the trial court's reasoning in the imposition of sentence. As this court has noted, the existence of new evidence or circumstances that "may justify the increase in sentence" is not sufficient to rebut the presumption of vindictiveness, rather, "it has consistently been required that a trial court state on the record reasons for the increase in the sentence in order to combat the presumption of vindictiveness." *Ferrell*, 2021-Ohio-1259, at ¶ 23, 170 N.E.3d 464. This deficiency is evident when considering the imposition of the consecutive sentences which augmented Jackson's aggregate sentence. The court found: "As the testimony was of the round being fired at or into the apartment complex, it's a very serious danger to the public. At least two of these offenses were committed as part of one or more course[s] of conduct and the harm caused by at least two of the offenses were so great or unusual [that] no single prison term for any of the offenses committed as part of a course of conduct that adequately reflects the seriousness of the conduct." These findings are just as supportable by the evidence introduced at the first trial as they would be by the evidence introduced at the second trial. They provide no insight at all into why the court felt concurrent sentences were adequate after the first trial but consecutive sentences were merited after the second trial. *Note also State v. Gwynne*, [173] Ohio St.3d [440], 2022-Ohio-4607, [231] N.E.3d [1035], ¶ 29 (there must be an "evidentiary basis" that is "adequate to fully support the trial court's consecutive-sentence findings"), vacated on other grounds, [173] Ohio St.3d [525], 2023-Ohio-3851, [231] N.E.3d [1109] (plurality opinion).

*Id.* at ¶ 62-66.

{¶9} Jackson's re-sentencing hearing occurred on April 15, 2024. The trial court imposed the same sentence that it imposed in January 2023. *Supra* at ¶ 7. With respect to his sentence being longer than the one originally imposed in January 2021, the court stated:

Case No. 2024-L-037

So there was quite a bit of additional testimony in that second trial as indicated by Miss McGee [the prosecutor] kind of recapping it but it's certainly contained in the record. So I'm presuming the Court of Appeals reviewed both transcripts when they decided that 1 plus 1 in fact does not equal 2 and remanded this thing. So it seems lost on them that there was additional testimony and when I did the sentencing on January 5th of '23 I cited the applicable statutes 2929.11, 2929.12, 2929.13 and 2929.14 before I pronounced the sentence.

…

So apparently that's no longer good enough for the Court of Appeals because as I said at the beginning of this hearing trial number 2 was a brand new trial and as I said I refused to allow the state to read in the testimony of Mr. Jackson from the first trial. January 5th of '23 was a brand new sentence where I considered the applicable statutes 2929.11, 2929.12, 2929.13 and 2929.14.

Now the additional testimony was very impactful in that case. We had the opportunity to see Mr. Anderson live which we didn't because the State didn't want to bring him back the first trial. So I heard the testimony and I heard Mr. Heindel [defense counsel], your focus is on Anderson coming from Detroit to Eastlake and I have considered all that. I've considered all the testimony and I'm not sure why the Court of Appeals doesn't understand that 1 plus 1 equals 2 but I'm under the obligation to consider all those factors that Miss McGee has gone through and gives her position as to what justifies what in this case here at sentencing [sic] and I did that the first time and I'm not sure, the Court of Appeals has indicated that I have imposed a vindictive sentence when they can't even separate out the fact that 3 of those 6 years were mandatory. Why they don't know that escapes me.

…

So in fact your request that I take into consideration that Anderson came from Detroit and once again we didn't hear from Anderson the first time, we didn't hear these phone calls of Mead the first time. We didn't hear about the attempt to influence Jenkins' testimony; Jenkins' text messages; the letter that Mr. Jackson caused to have sent out just before the trial started, we didn't hear any of that stuff. So I did take into consideration the fact that Anderson, he's a drug dealer from Detroit, that's what he is, that's what the jury heard, that's what I heard.

Case No. 2024-L-037

So I did take all that in[to] consideration because I considered all the applicable factors that exist in the statutory scheme. So it seems to me if I were vindictive, if I were mad that I had to sit here through a second trial if that were, if I were truly vindictive I would have let the State read in his testimony because I'm permitted to do that according to various Courts of Appeal. I'm permitted to do that. I didn't do that because that takes away, took away his constitutional right to remain silent, okay, so I don't mind doing the trial.

Yeah, I think the Court of Appeals was wrong in the first instance when they reversed it on the basis they did but so be it and awarded him a second trial and we had a second trial. If I were vindictive, if I were mad at Mr. Jackson for coming back for another trial then I could have consec'ed him on the gun specs on Count 4, right? I could have consec'ed him on the underlying offense on Count 4, right?

So reviewing these trials, reviewing the transcripts of these trials as the Court of Appeals is supposed to do it escapes me how they could possibly indicate that the sentence was vindictive but we're here for a brand new trial or brand new sentencing.

Jackson's sentence was memorialized on April 16, 2024.

{¶10} On May 13, 2024, Jackson filed a Notice of Appeal. On appeal, he raises the following assignment of error: "The Trial Court's sentence was vindictive and constitutes reversible error."

{¶11} Jackson's argument is that "the Trial Court missed the point presented by the remand," and "[a]s a result, the Trial Court failed to explain the reason for its increased sentence."

{¶12} The applicable governing law and standard of review is the same as in the prior appeal, quoted *supra* at ¶ 8.

{¶13} It is evident that the trial court struggled to comprehend the purpose of the remand for re-sentencing. Contrary to the comments of the lower court, the remand was not based on evidence or suspicion or a determination of actual vindictiveness. Rather,

a presumption of vindictiveness arose by operation of law based on the fact that Jackson received a harsher sentence from the same trial judge after his second trial than he did after his first trial. *See*, *e.g., State v. Watson*, 2023-Ohio-1469, ¶ 33 (5th Dist.). Such was, and is, the law in this and other appellate districts at the time of the 2023 appeal. It was not a novel construction or application of the law.

{¶14} In the present case, the trial judge imposed a sentence after Jackson's second trial that was effectively six years longer than it did after his first trial. The fact that three of these years could be accounted for by an additional, mandatory firearm specification did not prevent the presumption from arising. After the second trial, it imposed a longer sentence for Attempted Murder and ordered one of the sentences for Improperly Discharging a Firearm to be served consecutively. Even without considering the imposition of an additional mandatory firearm specification, Jackson's sentence was objectively harsher after re-trial.

{¶15} The Ohio Supreme Court describes the nature of a presumption: "A presumption of law is a procedural device which takes the place of evidence in certain cases until the facts in lieu of which the presumption operates are shown. It is equivalent to a substantive rule of law of the effect that a particular fact must be assumed when another particular fact or group of facts exist, or there is substantial evidence of such particular facts, unless and until the truth of the assumed fact is disproved." *Shepherd v. Midland Mut. Life Ins. Co.*, 152 Ohio St. 6, 14-15 (1949). In the present context, the assumed fact of vindictiveness may be readily disproven by an affirmative statement to the effect that a harsher sentence is merited given the additional evidence presented at re-trial. Again, the current state of the law in this and other appellate districts is that the

Case No. 2024-L-037

circumstances justifying a harsher sentence must be affirmatively stated by the sentencing court and not inferred by the reviewing court. *See*, *e.g.*, *State v. Hough*, 2024-Ohio-2430, ¶ 63 (10th Dist.) (affirming a harsher sentence after remand where "the trial court affirmatively stated its reasons for the sentence imposed based on objective information"); *State v. Hitchcock*, 2020-Ohio-6751, ¶ 29 (5th Dist.) ("due process compelled the trial court to affirmatively explain the increase in its sentence in order to overcome the *Pearce* presumption of vindictiveness"); *State v. King*, 2010-Ohio-4400, ¶ 53 (9th Dist.) ("the trial court affirmatively stated its reasons for increasing King's sentence"). As the sentencing court, it was the lower court's responsibility to state affirmatively that a longer sentence was being imposed because of additional witness testimony or new information being presented or the defendant's conduct subsequent to the original trial or some other reason. It is not the responsibility of this court to infer the sentencing court's motivations. As noted by this Court in *Jackson*: "When the same sentencer acts in both instances, giving rise to the presumption of vindictiveness, the explanation required by *Pearce* is not avoided merely because of some differences in the two proceedings. *It is the sentencer's explanation of how those differences affected the sentencer's calculus in imposing a harsher sentence* that operates to dispel the defendant's apprehension that exercising his right of appeal could work to his prejudice in this way." (Emphasis added.) (Citation omitted.) *Jackson*, 2023-Ohio-4368, at ¶ 63 (11th Dist.).

{¶16} There will often be new or additional information available to the court following a remand. A mere list of facts, even new facts, without stating the reasons that those facts justify an increased sentence does nothing to overcome the presumption. It

actually makes the presumption meaningless since every case will have some change in facts or procedure upon remand, and a mere listing of such differences without explanation is simply not enough to overcome the presumption. It also makes our review meaningless since we would be limited to asking only whether there were facts or circumstances present that could justify the harsher sentence. While this Court is loath to reverse a decision for apparently trivial or inconsequential reasons, it is this Court's duty to apply the law as it exists just as much as it is the trial court's duty to abide by it. The situation could be analogized to a trial court failing to state the proper findings for the imposition of consecutive sentences despite abundant justification for their imposition existing in the record. Unless the findings are actually made on the record by the trial court, the sentences must be reversed. *See State v. Farnsworth*, 2013-Ohio-1275, ¶ 11 (7th Dist.) ("[i]t appears that the trial court would be well within its province in making such a finding given the facts of this case, but a reviewing court may not imply a statutorily required finding that does not appear in the record simply because the facts of the case are particularly appalling"); *State v. Broadus*, 2003-Ohio-3325, ¶ 49 (8th Dist.) (Kilbane, J., concurring and dissenting) ("[a]lthough the record indicates that the judge could have made findings supporting consecutive sentences, the statute requires more[;] … the findings must actually be made at sentencing, not merely implied or shown capable of being found").

{¶17} To make the matter clear, all that was required of the trial court on remand was a statement (not a dissertation or prolegomenon) to the effect that, in light of the additional evidence available at the second trial, a harsher sentence was justified. Simply affirming that additional evidence was available at the second trial is not stating that a

harsher sentence was being imposed because of the additional evidence. *Ferrell*, 2021-Ohio-1259, at ¶ 23 (11th Dist.) ("even presuming that the letter [reflecting negatively on Ferrell's conduct], if considered by the court, may justify the increase in the sentence, it has consistently been required that a trial court state on the record reasons for the increase in the sentence in order to combat the presumption of vindictiveness"). The attorneys understood this as demonstrated by the arguments raised on appeal as well as by the prosecutor's efforts at sentencing that the court make it "abundantly clear … the difference in trial[s] … warrants a harsher sentence." Inasmuch as "the trial court did not provide the statement the majority seemingly desired" in the prior appeal, the court did not comply with this court's directive. *Infra* at ¶ 30; *Nolan v. Nolan*, 11 Ohio St.3d 1, 4 (1984) ("the decision of an appellate court in a prior appeal will ordinarily be followed in a later appeal in the same case and court").

{¶18} In the present case, the trial court again did not affirmatively state its reasons for imposing a harsher sentence after re-trial. The court expressed its opinion that the re-trial was a "brand new trial" with "brand new evidence," that the court "did not hear substantially the same evidence" in each trial, "indicated [as much] in the record prior to the last sentencing," and that the record in this regard "wasn't the least bit ambiguous." It is evident that, since the court believed it did nothing wrong at the prior sentencing, it believed it did not need to do anything differently in the current sentencing. Brief of Appellant at 19 ("[n]othing in the resentencing hearing on April 15, 2024 or the Sentencing Entry of April 16, 2024 was different"). Accordingly, the result on appeal will also be the same.

Case No. 2024-L-037

{¶19} It has been suggested that the prosecutor set forth the justifications for a harsher sentence at the sentencing hearing and that the trial court adopted her reasoning. There are two points to be made. First, despite the prosecutor's efforts to have the trial court state that the new evidence presented after the first trial merited a harsher sentence, the court did not explicitly state as much. Second, it is the court's responsibility to state its reasons for imposing a particular sentence or, as in this case, why it is enhancing a sentence upon re-trial. In *Ferrell*, 2021-Ohio-1259 (11th Dist.), this Court quoted the United States Supreme Court as follows: "'where the presumption [of vindictiveness] applies, the sentencing authority *or the prosecutor* must rebut the presumption that an increased sentence *or charge* resulted from vindictiveness.'" (Emphasis added.) *Id.* at ¶ 15, quoting *Wasman v. United States*, 468 U.S. 559, 569 (1984). The reference to the "prosecutor" in the foregoing is only relevant where a presumption arises in the context of additional or enhanced charges being brought against a defendant. It does not permit the prosecutor to rebut the presumption of vindictive sentencing (although a prosecutor may certainly set forth grounds for the imposition of a harsher sentence as was done here). Thus, it is certainly permissible for the prosecutor, in arguing for an enhanced sentence after retrial to identify the objective differences between the two trials. Nevertheless, the prosecutor's reasons for urging an enhanced sentence may not be imputed to the sentencing court which, as noted above, must affirmatively state the reasons a sentence is being enhanced.

{¶20} The lower court is reminded of its obligation to abide by the mandate of a superior court. *Nolan*, 11 Ohio St.3d 1, at syllabus. The continual failure to do so may result in the reassignment of the case to a new judge, *see*, *e.g.*, *McConnell v. Bare Label*

*Productions, Inc.*, 2017-Ohio-9325, ¶ 39 (11th Dist.), or the imposition of the original sentence, *see, e.g.*, *State v. Ferrell*, 2022-Ohio-890, ¶ 18 (11th Dist.).

{¶21} Finally, it should be noted that all members of the Ohio judiciary must "act at all times in a manner that promotes public confidence in the *independence, integrity, and impartiality* of the judiciary." (Emphasis added.) Jud.Cond.R. 1.2. Fulfilling this obligation is particularly critical when a judge is speaking from the bench in his official capacity. Not only are the trial judge's comments unnecessary and disrespectful, but they create an impression of animus toward this Court, the proceedings, and, contrary to the trial judge's protestations, toward the defendant as well (the sentencing hearing was resumed after adjournment when it was realized that Jackson was denied his right of allocution).

{¶22} The sole assignment of error has merit.

{¶23} For the foregoing reasons, Jackson's sentence is reversed and this case is remanded for further proceedings consistent with this opinion. Costs to be taxed against appellee.

JOHN J. EKLUND, J., concurs,

ROBERT J. PATTON, P.J., dissents with a Dissenting Opinion.

_____

ROBERT J. PATTON, P.J., dissents with a Dissenting Opinion.

{¶24} I respectfully dissent from the majority's disposition of Jackson's assignment of error and its determination that the trial court failed to rebut the presumption

Case No. 2024-L-037

of vindictive sentencing. I believe the present appeal represents an opportunity to clarify the standard of law in this district regarding how a trial court rebuts a presumption of vindictiveness when it imposes a greater sentence after a remand. The majority's opinion is a misapplication from our precedent in *State v. Ferrell*, 2021-Ohio-1259 (11th Dist.), and out of step with other Ohio appellate districts. Accordingly, I would affirm the trial court's most recent sentence in this case.

{¶25} As a preliminary matter, I neither condone nor excuse the trial court's repeated derogatory references to this court. Such remarks are as unnecessary as they are inappropriate. However, there are legal issues at play in this case that go beyond judicial squabbling. There are overarching, legitimate concerns in this case regarding the following of accepted legal precedent and properly exercising judicial restraint. This dissent is rooted in those concerns.

{¶26} Initially, Jackson was indicted on seven counts: Counts 1 and 2, Attempted Murder, felonies of the first degree, in violation of R.C. 2923.02; Counts 3 and 4, Felonious Assault, felonies of the second degree, in violation of R.C. 2903.11(A)(2); Counts 5 and 6, Improperly Discharging a Firearm at or Into a Habitation or School Safety Zone, felonies of the second degree, in violation of R.C. 2923.161(A)(1); and Count 7, Improperly Handling Firearms in a Motor Vehicle, a felony of the fourth degree, in violation of R.C. 2923.16(A). *State v. Jackson*, 2022-Ohio-3483, ¶ 5 (11th Dist.) ("*Jackson I*").[1] Counts 1 through 6 had accompanying firearm specifications pursuant to R.C. 2941.145 and discharge specifications pursuant to R.C. 2941.146.

---

1. This case was decided on Sept. 30, 2022, the same day the court decided the State's appeal in *State v. Jackson*, 2022-Ohio-3481, ¶ 7 (11th Dist.) ("*Jackson II*") which was dismissed as moot given the reversal on Jackson's appeal in *Jackson I*.

Case No. 2024-L-037

{¶27}   Jackson was ultimately convicted of Counts 1, 4, 5, 6, the accompanying specifications, and Count 7.  He was acquitted of Counts 2 and 3. At the initial sentencing, the trial court found that the felonious assault charge in Count 4 merged with the attempted murder charge in Count 1, and the State elected to proceed with sentencing on Count 1. *Id.* at ¶ 6. At this point, Jackson was facing a potential sentence consisting of the underlying offenses and the six firearm specifications.

{¶28}   The trial court sentenced Jackson to "an indefinite prison term with a minimum term of three years and a maximum term of four and one-half years on Count 1; three years on each of Counts 5 and 6; and 18 months on Count 7, all to be served concurrently. Jackson was also sentenced to an additional term of three years and five years as mandatory prison terms for the specifications in Count 1, to be served consecutively to each other, for a total of eight years in prison, and to be served prior to and consecutively to the underlying offenses. In all, Jackson faced a minimum of 11 years and a maximum of 12.5 years in prison." *Id.* at ¶ 7. The trial court did not impose a sentence on any of the other firearm specifications.

{¶29}   Both Jackson and the State filed appeals. The State, in its sole assignment of error, asserted "that the trial court was statutorily obligated to impose sentences on at least two of the three-year firearm specifications of which Mr. Jackson was convicted, in addition to imposing a sentence on one five-year discharge specification, and that the imposition of consecutive sentences on the five-year discharge specification and the three-year firearm specification failed to satisfy the obligation under R.C. 2929.14(B)(1)(g)." *State v. Jackson*, 2022-Ohio-3481, ¶ 7 (11th Dist.) ("*Jackson II")*. The State sought to have this court correct Jackson's sentence to include an additional three-

year firearm specification which would have raised Jackson's aggregate sentence of 11 to 12.5 years to 14 to 15.5 years. Because we reversed Jackson's convictions and remanded for a new trial, we determined that the State's appeal was moot. *Id.* at ¶ 8-9.

{¶30}  On remand, Jackson was retried on the following charges, renumbered from the original Indictment: Attempted Murder (Count 1); Felonious Assault (Count 2); Improperly Discharging a Firearm at or Into a Habitation or School Safety Zone (Count 3); Improperly Discharging a Firearm at or Into a Habitation or School Safety Zone (Count 4); and Improperly Handling Firearms in a Motor Vehicle (Count 5). Counts 1 through 4 each had two accompanying firearm specifications pursuant to R.C. 2941.145 and 2941.146. *State v. Jackson*, 2023-Ohio-4368, ¶ 5 (11th Dist.) ("*Jackson III*"). The jury convicted Jackson of all five counts. *Id.* at ¶ 30.

{¶31}  After retrial, the lower court determined that three of the five counts merged for purposes of sentencing: the Felonious Assault (Count 2) and Improperly Handling Firearms in a Motor Vehicle (Count 5) merged into Attempted Murder (Count 1). The trial court then sentenced Jackson on the three remaining counts: "For Attempted Murder (Count 1), the court ordered Jackson to serve a minimum of four years and maximum of six years in prison with a mandatory three years for the firearm specification under R.C. 2941.145 and a mandatory five years for the firearm specification under R.C. 2941.146. For Improperly Discharging a Firearm at or into a Habitation or School Safety Zone (Count 3), the trial court ordered Jackson to serve two years in prison with a mandatory three years for the firearm specification under R.C. 2941.145. For Improperly Discharging a Firearm at or into a Habitation or School Safety Zone (Count 4), the [trial] court ordered Jackson to serve two years in prison." *Id.* at ¶ 31. The sentences for Counts 3 and 4 were

Case No. 2024-L-037

ordered to be served concurrently with each other. The trial court then made the consecutive sentencing findings and ordered the sentence on Count 1 to be served consecutively to the terms imposed in Counts 2 and 3. The sentences imposed on the mandatory firearm specifications were ordered to be served consecutively with each other and consecutively to the sentence imposed on Count 1. Jackson's stated aggregate minimum prison sentence was 17 years, and the aggregate maximum sentence was 19 years.

{¶32} The trial court adjusted its initial sentence, concluding an additional conviction merged for purposes of sentencing, imposing the second firearm specification of three years that the State alleged was required in their dismissed appeal, increasing the base of the aggravated murder sentence by a year, decreasing the sentences imposed on Counts 3 and 4 by a year, and making the consecutive sentencing findings. Therefore, the increase of Jackson's sentence after retrial was a result of the trial court increasing the sentence in Count 1 by one year and by ordering the two-year concurrent prison terms in Counts 3 and 4, to be served consecutively to Count 1. Essentially, Jackson's base sentence was increased by three years.

{¶33} Jackson appealed. Among other things, he argued that the trial court engaged in vindictive sentencing. *Jackson III,* 2023-Ohio-4368, at ¶ 61 (11th Dist.). Despite the trial court's recitation of additional evidence at the initial sentencing hearing, the majority held that the recitation was insufficient. Specifically, the majority indicated that the trial court "succinctly highlights the differences in evidence presented at the two trials, *but it fails to explain* how *the additional evidence affected the trial court's reasoning in the imposition of sentence.*" (Emphasis added.) *Id.* at ¶ 66. In a 2-1 decision, this court

remanded the matter for resentencing so the trial court could provide its reasoning for the increased sentence upon retrial. *Id. at* ¶ 66.

{¶34} Judge Trapp observed in her concurrence/dissent:

> After acknowledging that the trial court listed with specificity and in detail the new evidence upon which it based its sentence, *the majority effectively imposes a new requirement: the trial court must also write a dissertation setting forth its subjective reasoning underlying the evaluation of the evidence, consideration of the sentencing factors, and resultant increase in the sentence.* Such a prolegomenon is not statutorily required nor is it imposed in any opinion addressing the presumption of vindictiveness and how it may be overcome.
>
> . . .
>
> Here, *the trial court's recitation of the additional evidence not presented at the first trial is the explanation of 'conduct or events' that formed the basis for a harsher sentence contemplated by the case law.* The trial court explained its rationale by describing the events or conduct that threw 'new light' on Mr. Jackson's 'conduct,' 'life,' or 'propensities': phone calls between Mr. Jackson and a prison inmate in which Mr. Jackson describes the incident; the mutual threats of Mr. Jackson and Mr. Anderson to kill each other and the admission that Mr. Jackson fired upon Mr. Anderson; the stark contrast in Mr. Davis' recollection during the two trials about whether a shooting occurred at all; and the testimony from the victim, who did not testify at the first trial, about Mr. Jackson's texts threatening to mark him as a 'snitch' via social media. What more needed to be said to justify the increased sentence?

(Emphasis added.) *Id.* at ¶ 70-72.

{¶35} Upon remand, in accordance with the majority opinion in *Jackson III*, the trial court resentenced Jackson. Defense counsel conceded that the trial court was required to impose a second mandatory three-year sentence on the firearm specification.

The trial court imposed the same sentence that was imposed at Jackson's first resentencing: an aggregate minimum prison term of 17 years to 19 years.

{¶36} Again, while the trial court's repeated derogatory references to this court were inappropriate, it appears that part of the trial court's frustration is predicated on the points raised by Judge Trapp in her concurrence/dissent in *Jackson III*. However improper the trial court's comments may be, they are not determinative to our review of the trial court's sentence and are wholly unrelated to the issue presented for review which is whether there are affirmative findings on the record regarding Jackson's conduct or events that occurred or were discovered after the original sentencing to rebut the presumption of vindictiveness.

{¶37} Indeed, the Fifth District Court of Appeals recently addressed a similar scenario involving a recalcitrant trial court judge who was ordered to resentence a criminal defendant after a reversal and remand in *State v. Watson*, 2023-Ohio-1469 (5th Dist.), *appeal not accepted*, 2023-Ohio-4034. Judge Andrew King similarly criticized a trial court's commentary, labeling it "wholly inappropriate" and explained that a trial court should refrain from making all improper commentary, especially when heard by the defendant, attorneys, and members of the public. *Id.* at ¶ 35.

{¶38} Despite the trial court's clear distaste for the remand in *Watson*, the Fifth District ultimately affirmed the trial court's decision, recognizing that "the judge should have done so without being combative towards this court and interjecting his personal opinion into the hearing." *Id.* The Fifth District properly aimed its disdain for the open and unwarranted criticism, while also recognizing that the trial court's comments were "unrelated" to the imposition of a harsher sentence. *Id.* at ¶ 36. "While inappropriate,

despite its bluster the trial court's comments are inconsequential because the record reflects it ultimately did comply with this court's directive to consider Watson's youth before imposing a sentence which included a potential term of life imprisonment." *Id*. at ¶ 26.

{¶39} I find Judge King's statements applicable here. The trial court's comments were inappropriate and improper. Such comments have the potential to undermine the public's confidence in the trial court's ability to apply the law fairly and justly. *Id.* at ¶ 35. These remarks have also unnecessarily clouded the majority's opinion in this case such that the majority opinion suggests the trial court did not follow this court's prior directive at all. The trial court's derogatory comments are irrelevant to our review of the trial court's sentence and unrelated to the issue presented for review which is whether there are affirmative findings on the record regarding Jackson's conduct or events that occurred or were discovered after the original sentencing to rebut the presumption of vindictiveness.

{¶40} In *State v. Ferrell*, 2021-Ohio-1259 (11th Dist.), this court set forth the relevant law regarding vindictiveness in resentencing:

> In *North Carolina v. Pearce*, 395 U.S. 711, 89 S.Ct. 2072, 23 L.E.2d 656 (1969), the United States Supreme Court held: 'whenever a judge imposes a more severe sentence upon a defendant after a new trial, the reasons for his doing so must affirmatively appear. *Those reasons must be based upon objective information concerning identifiable conduct on the part of the defendant occurring after the time of the original sentencing proceeding.*' *Id.* at 726, 89 S.Ct. 2072. This was based on the rationale that due process of law requires vindictiveness not play a part in sentencing and that a defendant must not be unconstitutionally deterred from exercising the right to appeal. *Id.* at 725, 89 S.Ct. 2072. Subsequently, the Court clarified that *Pearce* created a presumption of vindictiveness, and 'where the presumption applies, the sentencing authority or the prosecutor must rebut the presumption that an increased sentence or charge

resulted from vindictiveness; where the presumption does not apply, the defendant must affirmatively prove actual vindictiveness.' *Wasman v. United States*, 468 U.S. 559, 569, 104 S.Ct.3217, 82 L.Ed.2d 424 (1984). A presumption does not apply "in every case where a convicted defendant receives a higher sentence." *Alabama v. Smith*, 490 U.S. 794, 799, 109 S.Ct. 2201, 104 L.Ed.2d 865 (1989), quoting *Texas v. McCullough*, 475 U.S. 134, 138, 106 S.Ct. 976, 89 L.E.d.2d 104 (1986). It has been limited to circumstances in which 'there is a "reasonable likelihood" * * * that the increase in sentence is the product of actual vindictiveness on the part of the sentencing authority.' *Id.*

. . .

In Ohio, it has generally been held that 'a presumption of vindictiveness arises when the same judge imposes a harsher sentence following a successful appeal.' *State v. Banks*, 8th Dist. Cuyahoga No. 107048, 2019-Ohio-980, 2019 WL 1312864, ¶ 29; *State v. Carnahan*, 3d Dist. Defiance No. 4-15-18, 2016-Ohio-3213, 2016 WL 3057988, ¶ 13; *State v. Edwards*, 6th Dist. Wood No. WD-13-037, 2014-Ohio-2436, 2014 WL 2566262, ¶ 5-8. The presumption has been applied to resentencing after reversal due to errors made by the trial court in the initial sentence. *State v. Hitchcock*, 5th Dist. Fairfield No. 19-CA-56, 2020-Ohio-6751, 2020 WL 7395645, ¶ 9, 20-24; *Edwards* at ¶ 6-8.

*Ferrell* at ¶ 15-17.

{¶41} Therefore, when the same trial court judge resentences a defendant after a reversal and remand to a harsher sentence than the original sentence, the trial court judge must rebut the presumption of vindictiveness with "objective information" regarding the defendant's identifiable conduct that occurred subsequent to the original sentencing proceeding. *Id*.

{¶42} The standard we set forth in *Ferrell* is consistent with other Ohio appellate districts who have considered the same issue. The Second District has held:

*Pearce* requires that the trial court make findings based upon objective information concerning identifiable conduct on the

Case No. 2024-L-037

part of the defendant. 395 U.S. at 726, 89 S.Ct. 2072. 'Relevant conduct or events' sufficient to overcome the presumption of vindictiveness are those that throw 'new light upon the defendant's "life, health, habits, conduct, and mental and moral propensities." *Wasman v. United States*, 468 U.S. at 570-71, 104 S.Ct. 3217 (quoting *Williams v. New York* (1949), 337 U.S. 241, 245, 69 S.Ct. 1079). Thus, a court imposing an enhanced sentence on remand must 'detail the reasons for an increased sentence or charge' so that appellate courts may 'ensure that a non-vindictive rationale supports the increase.' *Id.* at 572, 104 S.Ct. 3217.

*State v. Davis*, 2007-Ohio-1030, ¶ 26 (2d Dist.).

{¶43} In *State v. Howard*, 2007-Ohio-4334 (2d Dist.), the Second District Court of

Appeals further noted:

Subsequently, in *Wasman v. United States*, (1984), 468 U.S. 559, 104 S.Ct. 3217, 82 L.Ed.2d 424, the Supreme Court explained that its holding in *Pearce* concerned 'enhancement [of a sentence] motivated by actual vindictiveness toward the defendant for having exercised guaranteed rights,' 468 U.S. at 568, 104 S.Ct. 3217, 82 L.Ed.2d 424, and that in *Pearce* 'the defendants' right to due process was violated not because the sentence and charge were enhanced, but because there was no evidence introduced to rebut the presumption that actual vindictiveness was behind the increases; in other words, by operation of law, the increases were deemed motivated by vindictiveness.' 468 U.S. at 568–569, 104 S.Ct. 3217, 82 L.Ed.2d 424. The presumption 'may be overcome only by objective information in the record justifying the increased sentence.' 468 U.S. at 565, 104 S.Ct. 3217, 82 L.Ed.2d 424, quoting *United States v. Goodwin* (1982), 457 U.S. 368, 374, 102 S.Ct. 2485, 73 L.Ed.2d 74.

*Howard* at ¶ 15.

{¶44} Similarly, in *State v. Hitchcock*, 2020-Ohio-6751 (5th Dist.), the Fifth District

Court of Appeals recognized:

The U.S. Supreme Court itself has cautioned, though, that this passage from *Pearce* 'was never intended to describe exhaustively all of the possible circumstances in which a sentence increase could be justified.' *Texas v. McCullough*,

475 U.S. 134, 141, 106 S.Ct. 976, 89 L.Ed.2d 104 (1986); see, also, *Wasman v. United States*, 468 U.S. 559, 572, 104 S.Ct. 3217, 82 L.Ed.2d 424 (1984). The Court reasoned that the defendant's increased sentence did not need to be supported by anything more than a logical, non-vindictive reason for the heightened punishment. *Texas v. McCullough*, 475 U.S. 134, 140, 106 S.Ct. 976, 89 L.Ed.2d 104 (1986). A presumption of vindictiveness may be overcome with any objective information that justifies an increased sentence. *Id*. at 142. This includes a trial court's discovery of 'new, probative evidence supporting a longer sentence[.]' *Id*. at 143.

(Emphasis added.) *Hitchcock* at ¶ 26.

{¶45} Finally, the Fifth District recently reaffirmed the standard we applied in

*Ferrell* in *State v. Watson*, 2023-Ohio-1469 (5th Dist.):

> While *Pearce* does not prohibit a trial court from imposing a longer sentence on remand, it does require the court to give reasons for the increased sentence in order to overcome a presumption of vindictiveness including conduct or events which cast "new light upon the defendant's life, health, habits, conduct, and mental and moral propensities." *Wasman v. United States*, 468 U.S. 559, 570-571, 104 S.Ct. 3217, 82 L.Ed.2d 424 (1984) citing *Williams v. New York*, 337 U.S. 241, 245, 69 S.Ct. 1079, 1082, 93 L.Ed. 1337 (1949).
>
> "In Ohio, it has generally been held that 'a presumption of vindictiveness arises when the same judge imposes a harsher sentence following a successful appeal.'" *State v. Ferrell*, 2021-Ohio-1259, 170 N.E.3d 464, ¶ 17 (11th Dist.). Here, the resentencing was performed by the same judge as the original sentencing. Watson received an objectively harsher sentence since his prison term was lengthened by five years. The issue before us then is whether the presumption of vindictiveness arising from the harsher sentence is rebutted by the record. In order to overcome the presumption of vindictiveness, the *trial court must make affirmative findings on the record regarding conduct or events that occurred or were discovered after the original sentencing. State v. Thrasher*, 178 Ohio App.3d 587, 2008-Ohio-5182, 899 N.E.2d 193, ¶ 17 (2nd Dist.), citing *Pearce* and *Wasman*.

(Emphasis added.) *Watson* at ¶ 32-33.

Case No. 2024-L-037

{¶46} The majority opinion attempts to limit *Ferrell's* inclusion of the prosecutor as a factual source to overcome a presumption of vindictiveness as we now require that the trial court alone provide its subjective reasoning in addition to identifying objective information for a harsher sentence on remand and explaining "*how* the additional evidence affected [its] reasoning in the imposition of sentence." *Jackson III*, 2023-Ohio-4368, at ¶ 66 (11th Dist.) While the prosecutor cannot rebut the presumption of a vindictive sentence, as the authority to sentence a defendant lies solely with the trial court, the majority's application of *Ferrell* forecloses a trial court's ability to adopt the reasoning set forth by a party. Conspicuously absent from the standards set forth by the Second and Fifth Districts is any requirement that a trial court must articulate its subjective reasoning as a necessary component to rebut a presumption of vindictiveness. Such proposition stands in stark contrast with established Ohio law permitting a trial court consider information from "other sources," which would include a prosecutor's statements made on the record, about new evidence justifying a longer sentence after remand and retrial. *State v. Hough*, 2024-Ohio-2430, ¶ 56 (10th Dist.). *See State v. Collins*, 2013-Ohio-938, ¶ 12 (8th Dist.). As such, the majority's position is not only a departure from our prior precedent in *Ferrell*, but also not in concert with other appellate districts in the State.

{¶47} In accordance with this court's directive in *Jackson III,* the trial court again emphasized that new evidence was presented at the retrial. "I was here for both trials, I did not hear substantially the same evidence as I've indicated in the record . . ." The sentencing transcript reflects that the assistant prosecutor described at least three

specific factual circumstances that were unknown prior to the first trial but later came to light after the second trial. (Resentencing Transcript, Dkt. 375, pp. 15-17.)

{¶48} Specifically, the State recounted the new evidence presented at Jackson's second trial: "the phone calls with Peter Mead," "the threatening of the victim," and Jackson mocking the victim and "making light of the offense," which the State asserted "demonstrates a lack of remorse." The State also noted "Mr. Davis's extreme lack of memory" after Jackson "told Mr. Davis to plead the Fifth." There was also new testimony presented by Jackson and Miss Dicello. Finally, an additional piece of evidence presented was the letter that Jackson attempted to send from jail immediately before the retrial. The State asserted that these new pieces of evidence indicated that the offense is more serious and recidivism is likely, factors that a trial court must consider when fashioning a sentence.

{¶49} The trial court further noted the new evidence that was not presented at the first trial, requiring the trial court to sentence Jackson anew:

> Now the additional testimony was very impactful in that case. We had the opportunity to see Mr. Anderson live which we didn't because the state didn't want to bring him back the first trial. So I heard the testimony and I heard Mr. Heindel, your focus is on Anderson coming from Detroit to Eastlake and I have considered all that. I've considered all the testimony and I'm not sure why the Court of Appeals doesn't understand that 1 plus 1 equals 2 but I'm under the obligation to consider all those factors that [the assistant prosecutor] has gone through and gives her position as to what justifies what in this case here at sentencing and I did that the first time and I'm not sure, the Court of Appeals has indicated that I have imposed a vindictive sentence when they can't even separate out the fact that 3 of those 6 years were mandatory.

(Resentencing Transcript, Dkt. 375, pp. 21-22.)

Case No. 2024-L-037

{¶50} The trial court noted the objective information needed to rebut the presumption of vindictiveness including "'new, probative evidence supporting a longer sentence' and relevant events or conduct that shine 'new light upon the defendant's "life, health, habits, conduct, and mental and moral propensities."'" *Ferrell*, 2021-Ohio-1259, ¶ 20 (11th Dist.), quoting *Texas v. McCullough*, 475 U.S. 134, 143 (1986).

{¶51} However, the majority opinion concludes that the trial court did not "affirmatively state its reasons for imposing a harsher sentence after re-trial." The majority overlooks the trial court's compliance with *Ferrell* in this case in favor of judicial overreach.

{¶52} Remarkably, the majority states: "[t]o make the matter clear, all that was required of the trial court on remand was a statement to the effect that, in light of the additional evidence available at the second trial, a harsher sentence was justified." This is precisely what the trial court did.

{¶53} At the resentencing, the assistant prosecutor inquired if "the findings that Your Honor made regarding the difference in the trial directly relate to the seriousness of the crime as well as the likelihood of recidivism which warrants a harsher sentence." The trial court stated, "of course" and "absolutely." While the trial court did not provide the statement the majority seemingly desired, the trial court did, albeit begrudgingly, comply with this court's directive. It may be the best practice for the trial court to have restated the reasoning presented by the State. Instead of acquiescing, however, the record in this case contains the trial court's averment that a logical, non-vindictive reason exists for the heightened punishment which overcomes any presumption of vindictiveness.

{¶54} Importantly, the trial court was required to increase Jackson's sentence by three years for the firearm specification. Contrary to the majority's position, the imposition

of the additional statutorily mandated three-year term does not, by itself, demonstrate vindictiveness.

{¶55} Furthermore, after retrial, the trial court made consecutive sentencing findings. While the majority may believe that the trial court could have imposed consecutive sentences previously, that is irrelevant. The trial court only made the findings after the retrial, when it was presented with the new evidence. The lower court thus reasoned that the sentence was "necessary to protect the public from future crime, or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public . . . and that at least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct." R.C. 2929.14(C)(4).

{¶56} The trial court's increase of Jackson's sentence was not due to vindictiveness, but was instead, "based upon objective information concerning identifiable conduct on the part of the defendant occurring after the time of the original sentencing proceeding." *Jackson III,* 2023-Ohio-4368, at ¶ 63, 66 (11th Dist.). As the trial court explicitly agreed that the increase from the initial sentence, to wit: the increase on Count 1 and imposition of consecutive sentences, was directly related to the seriousness of the crime as well as the likelihood of recidivism which warrants a harsher sentence, I would find that that the presumption of vindictiveness has been rebutted.

{¶57} Based on the foregoing, I respectfully dissent.

Case No. 2024-L-037

# JUDGMENT ENTRY

For the reasons stated in the opinion of this court, it is the judgment and order of this court that the judgment of the Lake County Court of Common Pleas is reversed, and this matter is remanded to the trial court for further proceedings consistent with the opinion.

Costs to be taxed against appellee.

_____
JUDGE MATT LYNCH

_____
JUDGE JOHN J. EKLUND,
concurs

_____
PRESIDING JUDGE ROBERT J. PATTON,
dissents with a Dissenting Opinion

**THIS DOCUMENT CONSTITUTES A FINAL JUDGMENT ENTRY**

A certified copy of this opinion and judgment entry shall constitute the mandate pursuant to Rule 27 of the Ohio Rules of Appellate Procedure.

Case No. 2024-L-037